MATHEWS, Justicé.
This is an appeal from a final decree foreclosing a chattel mortgage.
The original bill of complaint sought to foreclose a mortgage allegedly given to secure “certain goods and merchandise” purchased by McGregor after “the 1st day of December, 1949.” The chattel mortgage attached to the bill of complaint recited that it was given “as security for such future advances as are made within one year of the date hereof” — “it being expressly understood by the mortgagor and mortgagee that this mortgage of personal property contemplates future advances of merchandise and material on open account.”
After the answer was filed, the appellee filed an amendment to the bill of complaint as allowed by the Court. ' In the amendment the appellee changed his position from an attempt to foreclose a mortgage for merchandise sold subsequent to December 1, 1949, to a claim for merchandise sold prior to December 1, 1949. Notwithstanding the positive recitals of the mortgage that its purpose was to secure the payment of future purchases, the appellee relies upon *76 another provision of the mortgage as follows :
“This mortgage is intended to secure said note or notes together with all extension or extensions, renewal or renewals of such note or notes or any obligation owing directly or indirectly by the mortgagor to the mortgagee.”
It is urged by the appellee that the note and mortgage was given as security for all purchases, past, present, or future.
It is contended by the appellent, first, that the note and mortgage was not given as security for the payment of any merchandise bought prior to the date of the execution and delivery of the mortgage, and second, if the mortgage should be construed in accordance with the contentions of the appellee, that he had purchased no goods or merchandise prior to the date of the execution and delivery of the mortgage except some equipment, which will be hereafter mentioned.
For the year prior to December 1, 1949, the appellant had leased the dairy farm to one J. G. Vilsack, and at the time of the execution and delivery of the chattel mortgage, the appellant had taken or was taking possession of the dairy farm in order to again run the same as his own.
. An Examiner was appointed to take the testimony. In an attempt to prove its case the appellee presented its books of account in the form of sales slips and ledger-sheets. The name of the appellee did not appear anywhere. The account had been kept in the name of a third party, J. G. Vilsack, to whom the appellant had leased his dairy farm. While the manager for the appellee was testifying, we find the following:
“Q. And you advanced credit to the Sunny Hill Dairy on the strength of Mr. Vilsack’s credit? A. Yes, I might say that the account was kept in current position all the time we were dealing with Mr. Vilsack.
* * * * * *
“Q. But isn't it a fact that you felt as manager of General Mills that my credit was not good and you extended credit to Mr. Vilsack on the faith of his financial ability to pay? A. Yes, that is correct all the time he was manager of the farm.
“Q. Now then on December 1, 1949 you agreed to extend me credit on a secured basis? A. Yes, that is correct.
“Q. And I believe General Mills sent here an executive officer to arrange this credit on a secured basis? A. Yes.
***** *
“Q. And after negotiations with Mr. Gray, the Credit Manager, this mortgage and note were executed, is that correct? A. That is correct.
* * * * * *
“Q. On or near December 1, 1949 your company furnished us, did it not, a list of equipment, such as .pasteurizers, pumps, homogenizers, coolers and thermometers? A. Yes.
“Q. Is it true that all of that merchandise was returned to you about March or April, 1950? A. Most of it was. * *
It was also contended by the appellee that there was a power of attorney given by the appellant to Vilsack and that Vilsack could have bought goods and' merchandise in the name of the appellant under this power of attorney. This seems to be an afterthought, as the entire record reveals that at no time prior to December 1, 1949, did the appellee even know of any such power of attorney. In addition to that the testimony of the manager for the appellee is clear, positive and direct to the effect that credit was extended to Mr. Vilsack while he was lessee and was kept in his name and the goods and merchandise were charged to him. He further testified that .the credit o-f the appellee was not good and that the credit was extended to Mr. Vilsack on the faith “of his financial ability to pay.”
It also appears from the record and the testimony that the appellant purchased certain equipment to be used on the dairy farm from the appellee originally on a proposed retain title contract. After a Mr, Gray, Credit Manager for the appellee, was sent down to investigate the credit of the ap *77 pellant on or about December 1, 1949, the equipment, such as pasteurizers, pumps, homogenizers, coolers and thermometers, were furnished to the appellant. The proposed retain title contract was never executed and in-lieu thereof the mortgage and note were executed. The inventory of the dairy equipment was $6,180. The appellant paid a cash payment of $1,500 on this equipment and agreed to pay monthly installments of $260 each. Two of these monthly installments were paid in addition to the $1,500 down payment. Thereafter the dairy equipment was returned to the appellee and the note and the mortgage of December 1, 1949, stood as security for the purchase of goods and merchandise subsequent to December 1, 1949.
The mortgage and note involved in this foreclosure should be. construed in the light of the undisputed facts and circumstances shown by the evidence. Such note and mortgage were not given as security for the goods and merchandise furnished and charged by the appellee to Mr. Vilsack, but were given as security for advances of goods and merchandise to be made to the appellant in the future beginning on December 1, 1949.
Reversed for further proceedings in accordance with this opinion.
TERRELL, Acting Chief Justice, and ROBERTS and DREW, JJ., concur.